IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES W. WATKINS,

        Plaintiff,

v.                                                   Civil Action No.5:04-CV-141

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
              Defendant.

**REPORT AND RECOMMENDATION**
**SOCIAL SECURITY**

**I.  Introduction**

A.    Background

     Plaintiff, James W. Watkins, (Claimant), filed his Complaint on December 29, 2004, seeking

Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner

of Social Security, (Commissioner).[1]  Commissioner filed her Answer on March 29, 2005.[2]

Claimant filed his Motion for Summary Judgment and Brief on May 2, 2005.[3]  Commissioner filed

her Motion for Summary Judgment and Brief in Support on May 19, 2005.[4]

B.    The Pleadings

           1.     Claimant's Motion for Summary Judgment and Brief.

           2.     Commissioner's Motion for Summary Judgment and Brief in Support.

C.    Recommendation

---

[1] Docket No. 1.

[2] Docket No. 5.

[3] Docket No. 6.

[4] Docket No. 8.

1.    I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision.  Specifically, the ALJ (1) properly determined that Claimant was no longer disabled after October 29, 2002; and (2) properly found that the Commissioner met her burden at  Step Five of the Sequential Analysis.

## II.  Facts

A.    Procedural History

On March 6, 2002, Claimant filed for Disability Insurance Benefits (DIB) alleging disability since May 24, 2001.  The application was denied  initially and on reconsideration.  A hearing was held on March 7, 2003 before an ALJ.  On April 23, 2003, the ALJ issued a partially favorable decision finding Claimant disabled for a closed period from May 24, 2001 through October 29, 2002.  The Appeals Council denied Claimant's request for review of the ALJ's decision on August 24, 2004.  This action was filed and proceeded as set forth above.

B.    Personal History

Claimant was 37 years old on the date of the March 7, 2003 hearing before the ALJ.  Claimant has a high school education and past relevant work experience as a driver, tire retreader, laborer and dairy manager at a grocery store.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability: May 29, 2002- April 23, 2003.

**Russell Biundo, M.D., Inc., Dr. Clifford Valentino, 11/05/2002, Tr. 173**
ASSESSMENT:
1.     Work related injury.
2.     Chronic radiating low back.

3.       L4-5 herniation with caudal migration disc fragment.
4.       Six days relief with ESI.

**United Hospital Center, Dr. Valentin, 2/28/2002, Tr. 194**
OPERATION:       Caudal epidural injection with fluoroscopy.

**Physical Residual Functional Capacity Assessment, 4/11/2002, Tr. 196-203**
EXERTIONAL LIMITATIONS:
Occasionally lift/carry: 20 pounds;
Frequently lift/carry: 10 pounds;
Stand and/or walk:  about 6 hours in an 8-hour workday;
Sit: must periodically alternate sitting and standing to relieve pain or discomfort;
Push and/or pull: unlimited.

POSTURAL LIMITATIONS:
      Climbing, balancing, stooping, kneeling, crouching, crawling: occasionally.

MANIPULATIVE LIMITATIONS:
None established.

VISUAL LIMITATIONS:
None established.

COMMUNICATIVE LIMITATIONS:
None established.

ENVIRONMENTAL LIMITATIONS:
Extreme cold, extreme heat, hazards: avoid concentrated exposure.
Wetness, humidity, noise, vibration, fumes, odors:   unlimited.

**Physical Residual Functional Capacity Assessment, 7/02/2002, Tr. 206-213**
EXERTIONAL LIMITATIONS:
Occasionally lift/carry: 20 pounds;
Frequently lift/carry: 10 pounds;
Stand and/or walk:  about 6 hours in an 8-hour workday;
Sit: about 6 hours in an 8-hour workday;
Push and/or pull: unlimited.

POSTURAL LIMITATIONS:
      Climbing, balancing, stooping, kneeling, crouching, crawling: occasionally.

MANIPULATIVE LIMITATIONS:
None established.

VISUAL LIMITATIONS:
None established.

COMMUNICATIVE LIMITATIONS:
None established.

ENVIRONMENTAL LIMITATIONS:
Extreme cold, extreme heat, hazards: avoid concentrated exposure.
Wetness, humidity, noise, vibration, fumes, odors:   unlimited.

**Tri-State Occupational Medicine, Inc, Dr. Joseph Grady, 10/29/2002, Tr. 292**
ASSESSMENT:      1.      Acute and chronic lower back pain with reported disc protrusion at
                                the L4-5 level.
                          1.      Reported history of right foot fracture.

**Medical Center of Taylor County, 2/3/2003, Tr. 300**
Assessment:   1.      Non-insulin Diabetes.
                      2.      Neuropathy.

**Medical Center of Taylor County, 10/28/2002, Tr. 301**
Assessment:   1.      Diabetes.

**Medical Center of Taylor County, 12/31/2002, Tr. 301**
Assessment:   1.      Diabetes.

**Medical Center of Taylor County, 9/30/2002, Tr. 302**
Assessment:   1.      Diabetes.

**James E. Malone, 3/03/2003, Tr. 307**
Assessment/Plan:      1.      Chronic lumbosacral back pain.

**James E. Malone, 1/14/2003, Tr. 310**
Assessment/Plan:      1.      Lumbosacral back pain with a history of bulging discs.

**James E. Malone, 1/2/2003, Tr. 312**
Assessment/Plan:      1.      Chronic lumbosacral back pain.  He does have a herniated disc.

**James E. Malone, 11/07/2002, Tr. 314**
Assessment/Plan:      1.      Chronic lumbosacral back pain.  He seems stable at this time.

**James E. Malone, 10/03/2002, Tr. 316**
Assessment/Plan:      1.      Chronic lumbosacral back pain.

**James E. Malone, 8/22/2002, Tr. 319**

Assessment/Plan:    1.    Chronic lumbosacral back pain.

**James E. Malone, 8/02/2002, Tr. 321**
Assessment/Plan:    1.    Chronic lumbosacral back pain.

**James E. Malone, 7/08/2002, Tr. 323**
Assessment/Plan:    1.    Chronic lumbosacral back pain.

**United Hospital Center, MRI of the Lumbar Spine, 9/6/2002, Tr. 325**
IMPRESSION:    1.    Central L4-5 herniated disc with slight caudal migration of disc fragment and focal disc bulge or small central herniated disc at L5-S1 but without definite nerve root impingement.

D.    Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows

(Tr. 332-361):

Q    All right.  And just briefly, what injuries have you had and are you being treated

for?

A    A herniated disc, L4/L5.  They told me I had a fracture in my foot.  Now they

think the sugar taking it over is neuropathy in my legs.  And - -

Q    From the accident, though.  So the disc, lumbar disc?

A    It was a lumbar disc.

Q    And what foot, or was it both feet?

A    It was the right foot, it was.  Just had a lot of - - I don't know how you pronounce

it.  My language is - - lot of bruises and torn ligaments and stuff in my legs.  Because when they

sent me to UHC and they released me that afternoon - - that was early in the morning.  That

afternoon I couldn't even walk.

*            *            *

5

Q       And you have a cane here today?

A       Yes.

Q       Tell me, how do you use the cane?  Where and - -

A       If I got to do any walking whatsoever, I got to have this cane.  I got to have something to lean on.

Q       So do you go to the mall occasionally or grocery store?

A       Well, I go to a grocery store like Wal-Mart because that's - - they got everything that we need.  Our groceries and our drugstores and stuff and pharmacies and whatever.  If I don't have a buggy to lean on, I need this cane.

Q       Do you use it in the home at all?

A       No.  I got the walls and I got the chairs and the tables and stuff.

Q       For?

A       To grab a hold of.

                        *               *               *

Q       With your foot, what kind of injuries did you have there, and what's been done for that?

A       They told me I had a fractured foot.

Q       This was the right.  Is that correct?

A       Yes.

Q       And any surgery or any - -

A       No.  They said it wasn't a big enough fracture to put a cast on it.  They said it would heal by itself.

Q       Do you have any continuing problems from that foot injury?

A       Yeah.  That foot thumps, it does, when I'm on a lot.

Q       All right, could you describe what you're talking about?

A       Just feel like you're getting electrocuted.  Like a stabbing, aching pain.

Q       All right.  And this is when you're what, with weight on it?

A       Yeah, with weight on it.

*                   *                   *

Q       All right, and tell me - - I mean, what's your experience?  What do you feel with the neuropathy?

A       My legs go numb, tingling, burning sensation.

Q       And is this one or both legs?

A       Both legs.

*                   *                   *

A       Just seem like the pain goes from my back clear down to my legs, and if I don't sit down after 30 minutes at the longest, my legs will buckle on me.  Just go numb.

*                   *                   *

Q       What about sitting?  Actually, you were sitting here for a few minutes before the Judge came in, and then stood.  What, if any, problems do you have sitting?

A       Makes my legs go numb.  It gives me a real sharp pain in my back, like it is now.

Q       What is your most comfortable position?

A       Lying back in the recliner.

## 2. Vocational Expert

7

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 361-365):

Q        Would you describe Mr. Watkins' past work please?

A        Past work - - his work at Foodland in the frozen and dairy area, he worked as a manager and stocking shelves.  Exertional level is medium.  Skill level is semi-skilled.  He worked as a spinner's helper in fiberglass.  Exertional level is medium.  Skill level is unskilled. He worked as a laborer for capping tires.  Exertional level is medium.  Skill level is unskilled. He also worked as a driver for State Auction auto action.  Exertional level is light.  Skill level is unskilled.

ALJ        Please assume a younger individual with a high school education precluded from performing all but sedentary work with a sit-stand option.  No repetitive bending.  No hazards such as dangerous and moving machinery, unprotected heights.  No climbing or walking on uneven ground.  Unskilled, low-stress work - - strike that.

*                    *                    *

ALJ        Okay.  The hypothetical is sedentary, sit-stand, no repetitive bending, no hazards, no climbing, or walking in uneven ground.  With those limitations, Mr. Ganoe, can you describe any work this hypothetical individual can perform?

VE        Sedentary exertional level.  Security surveillance monitor, 97,000 nationally, 9,000 locally.  Dispatcher/router, 111,000 nationally, 9,000 regionally.  Assembler, 149,000 nationally, 6,500 regionally.  And because the hypothetical has no repetitive bending in it, we reduce those numbers in half, Your Honor.

ALJ        Are those jobs consistent with the DOT?

VE    Yes, they are, Your Honor.

ATTY   Excuse me.  What was that last one?

VE    Assembler.

ALJ    Second hypothetical.  Mr. Watkins testified he lies down maybe five times for at least 15 minutes.  If he even had to lie down one hour in the a.m. of a workday and one hour in the p.m. due to pain, are those jobs impacted?

VE    Yes, they are, Your Honor.  There would be no jobs available.

ALJ    Similarly, if his concentration was affected by his pain where he couldn't stay on task one-third to two-thirds of the day, are those jobs also affected?

VE    Yes, they would be, Your Honor.  There'd be no jobs available.

  E.   <u>Lifestyle Evidence</u>

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life.

- Has a driver's license.  (Tr. 337).

- Goes to the grocery store, Wal-Mart.  (Tr. 346).

- Able to walk 25-30 yards without his cane.  (Tr. 346).

- Drives to his father's house (5-6 miles).  (Tr. 346).

- Can lift a 10 pound bag of potatoes.  (Tr. 349).

- Can stand for 15-30 minutes.  (Tr. 349).

- Sometimes takes care of his parents.  (Tr. 350).

- Goes to the store for his parents and takes his mother to her doctor's appointments.  (Tr.

350).

- Drives his father to get heating fuel. ( 350).

- Goes to his brother's house once a week.  (Tr. 351).

- Visits one of his relatives.  (Tr. 351).

- Vacuums, washes the dishes, does his laundry.  (Tr. 352).

- Able to do house chores for 1 ½ -2 hours.  (Tr. 353).

- Watches some television.  (Tr. 354).

- Sometimes babysits his children.  (Tr. 353).

- Uses a cane.  (Tr. 357).

- Smokes.  (Tr. 360).

## II.  The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that (1) the ALJ's conclusion that Claimant was not disabled after October 29, 2002 is not supported by substantial evidence; and, (2) the Commissioner failed to meet her burden at Step Five of the Sequential Analysis.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ (1) properly concluded that Claimant was not disabled after October 29, 2002; and (2) properly concluded that the Commissioner met her burden at  Step Five of the Sequential Analysis.

B.    <u>The Standards</u>.

    1.    <u>Summary Judgment</u>.   Summary judgment is appropriate if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.    Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.    Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.    Social Security - Medically Determinable Impairment. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.    Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i),

423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6.    <u>Social Security - Standard of Review</u>.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.    <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.  <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.    <u>Social Security - Substantial Evidence - Defined</u>.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.    <u>Social Security - Sequential Analysis</u>.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from

a listed impairment.  If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

10.     Social Security - Residual Functional Capacity.  A Residual Functional Capacity is what Claimant can still do despite her limitations.  20 C.F.R. §§ 404.1545, 416.945.  Residual Functional Capacity is an assessment based upon all of the relevant evidence.  Id.  It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition.  Id.  Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. Id.  These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities.  Id.  This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments.  Id.

11.     Social Security - Vocational Expert. Once it is established that a claimant cannot perform past relevant work, the burden shifts to the Social Security Administration to establish that a significant number of other jobs are available in the national economy which the claimant can perform.  20 C.F.R. §§ 404.1520(f), 416.920(f).

C.     Discussion

1. THE ALJ'S DECISION THAT CLAIMANT WAS NOT DISABLED AFTER OCTOBER 29,

Claimant contends that the ALJ's decision that Claimant was not disabled after October 29, 2002 is not supported by substantial evidence.   The Commissioner counters that the ALJ properly determined Claimant's RFC for sedentary work after October 29, 2002.

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520.  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. at § 404.1520(b).  If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment.  Id. at § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. at § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. at § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant has the residual functional capacity to perform other forms of substantial gainful activity, considering the claimant's age, education, work experience and impairments.  Id.

A Residual Functional Capacity is what Claimant can still do despite his limitations.  20 C.F.R. §§ 404.1545, 416.945.  Residual Functional Capacity is an assessment based upon all of the relevant evidence.  Id.  It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical

14

condition.  Id.  Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used.  Id.  These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities.  Id.  This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments.  Id.

It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

In his decision, the ALJ granted Claimant a closed period of disability.  In a "closed period" case, the ALJ determined that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of the decision.  Pickett v. Bowen, 833 F.2d 288, 289 (11th Cir. 1987).  The ALJ found that Claimant met his burden to show he was disabled between May 24, 2001 and October 29, 2002.  (Tr. 26).  The ALJ found that Claimant had not engaged in any substantial activity during this closed period.  (Tr. 19, 26).  He also found that Claimant had severe impairments, including L4-5 disc herniation, degenerative disc disease of the lumbar spine and diabetes mellitus.  (Tr. 19, 26).  The ALJ also found that the residuals from Claimant's right foot injury and visual limitations were non-severe. (Tr. 19).  With respect to the musculoskeletal listings 1.04 A and C and listing 9.08 for diabetes, the ALJ found that these conditions did not meet or equal any listing.  (Tr. 20, 26).  The ALJ also found that

claimant's assertions concerning his ability to work are credible "as they related to the period May 24, 2001 through October 29, 2002" (sic). (Tr. 26). With respect to Claimant's RFC, the ALJ found that during this closed period, Claimant could perform the demands of sedentary work that would allow his to sit or stand at will during the workday; that required no repetitive bending, climbing or walking on uneven terrain; that would not expose him to hazards, such as dangerous or moving machinery or unprotected heights. (Tr. 26). Additionally, as a result of his pain, Claimant needed to lie down one hour in the morning and one hour in the afternoon during the workday. (Tr. 26). Based on Claimant's age, education, RFC and the testimony of a vocational expert, the ALJ found that there existed no jobs in the national and regional economy which Claimant could perform from May 24, 2001 through October 29, 2002. The ALJ further determined that as of October 29, 2002, there were medical improvements in Claimant's back condition and, therefore, Claimant would have the same RFC with the exception of the need to lie down during the workday. (Tr. 26). Therefore, the ALJ found that Claimant was disabled within the meaning of the Act between May 24, 2001 and October 29, 2002, but not thereafter. (Tr. 27).

Although Claimant argues that substantial evidence does not exist in the record to support the ALJ's decision, his argument is without merit. The ALJ found that as of October 29, 2002, "there was medical improvement in the claimant's back condition." (Tr. 26). The regulations define medical improvement as:

> [a]ny decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s). See 20 C.F.R. § 404.1594(b)(1).

Under the medical improvement standard, it is the Commissioner who bears the burden of

16

demonstrating medical improvement.  <u>Lively v. Bowen</u>, 858 F.2d 177, 181 n.2 (4th Cir. 1988).[5]

While Claimant questions whether Dr. Grady's report suggested that Claimant's "condition was 'improved' to the point that he was capable of SGA," Pl.'s Br. at 11, substantial evidence supported the ALJ's findings that Claimant had experienced medical improvement to the extent he could engage in sedentary type work since October 29, 2002.   As stated above, it is the ALJ's responsibility to weigh the evidence, including medical evidence, in order to resolve any conflicts which might appear therein.  <u>Hays</u>, 907 F.2d at 1456.  The ALJ considered Dr. Grady's opinion that Claimant had reached maximum medical improvement by October 2002.  (Tr. 23).  The ALJ noted that "as of that date, the claimant had no definite signs of radiculopathy and Dr. Grady felt that surgery would not provide any improvement."  (Tr. 23).  The ALJ also considered the opinions of Dr. Malone and Dr. Jones.  (Tr.  26).  The ALJ noted that on April 26, 2002, Claimant reported to Dr. Jones that he had not had any recent physical therapy or any other recent treatment.  (Tr. 22).  Additionally, the ALJ noted that Claimant was no longer receiving conservative treatment other than medication and TENS unit since October 29, 2002.  (Tr. 23).

---

[5]  While the Fourth Circuit has not addressed this issue in a published opinion, the Court in <u>Stratton v. Apfel</u>, 2000 WL 1203903 (W.D.Va. 2000) applied the medical improvement standard in the review of a closed period case.  Additionally, the Undersigned notes that  a number of the circuits are applying the "medical improvement" standard to cases involving a closed period of disability.  See <u>Shepherd v. Apfel</u>, 184 F.3d 1196, 1200 (10th Cir. 1999)("We are persuaded by these other circuits that applying the medical improvement standard to cases involving a close period of disability is consistent with the language and legislative purpose in the Reform Act."); <u>Jones v. Shalala</u>, 10 F.3d 522 (7th Cir. 1993)(applying the medical improvement standard in the review of closed period case); <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1274 (3d Cir. 1987)("Fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determined that disability should be limited to a specific period."); <u>Pickett v. Bowen</u>, 833 F.2d 288, 292 (11th Cir. 1987)("Consequently, we discern from the broad remedial policies underlying the Disability Amendments that Congress intended to reach 'closed period' claimants.").

On October 7, 2002, Dr. Malone opined that Claimant's condition was stable. (Tr. 24). Although he had some soft tissue tenderness and mild muscle spasm, Claimant moved his lower extremities well. (Tr. 24). On January 2, 2003, Dr. Malone noted full range of motion and no tenderness upon Claimant's examination. Claimant was able to take his boots and socks off and on without difficulty. (Tr. 24). Straight leg raising was negative and there was no atrophy in the lower extremities. There were no gross motor or sensory deficits. (Tr. 24). Although on January 14, 2003, Claimant complained of a worsening of his back pain following a work attempt, Dr. Malone noted that his neurological examination failed to reveal any gross neurological deficit. Straight leg rasing on the right was "questionable only." (Tr. 24). No loss of muscle function was seen. (Tr. 24). Although he had tenderness of the back, Claimant has good flexion and extension of the back and range of motion of the lower extremities. (Tr. 24).

The ALJ further noted that Dr. Abraham examined Claimant on January 22, 2003, for purposes of a second opinion about his occupation injuries. (Tr. 24). Examination revealed some tenderness in the in the back with reduced range of motion. (Tr. 24). Claimant had 5/5 strength in the lower extremities and mild trophic changes distally. (Tr. 24). The ALJ noted that on February 13, 2002, Claimant's examination by Dr. Malone revealed full range of motion of the back and no neurological deficit. (Tr. 24). On March 3, 2003, Dr. Malone reported that Claimant had full range of motion of the back and legs. (Tr. 24).

Additionally, the ALJ considered Claimant's daily activities. For example, Claimant takes his father to get heating fuel and his mother to the store and to her doctor's appointments; takes his children to their appointments and gets them up in the morning; vacuums; washes the dishes; does some laundry; watches some television; and uses his computer. (Tr. 24). Claimant also

testified that he could lift a 10 pound bag of potatoes from the floor and stand in up to 30 minute intervals before he needed to sit.  (Tr. 349).

Therefore, substantial evidence supports the ALJ's decision that Claimant was not disabled after October 29, 2002.

2. <u>FAILURE TO MEET Her BURDEN AT STEP FIVE OF THE SEQUENTIAL ANALYSIS.</u>

Claimant also contends that the Commissioner failed to meet her burden at Step Five of the Sequential Analysis.  The Commissioner counters that the ALJ properly found that the Commissioner met her burden at Step Five of the sequential evaluation process.

Pursuant to the five-step inquiry employed by administrative law judges to determine whether a claimant is disabled within the meaning of the Social Security Act, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step.  <u>McLain v. Schweiker</u>, 715 F.2d 866 (4th Cir. 1993).  In this case, the administrative law judge determined that Claimant carried his burden of proof through the first four steps and demonstrated that he was unable to perform any of his past relevant work pursuant to 20 C.F.R. § 404.1565.  To prevail at step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and take into account vocational factors such as age, education, and skills.  <u>McLamore v. Weinberger,</u> 538 F.2d 572 (4th Cir. 1976).  Thus, this Court's inquiry is limited to whether substantial evidence supports the administrative law judge's determination at step five of the inquiry--specifically, whether substantial evidence supports the administrative law judge's findings of Claimant's residual functioning capacity and the availability of jobs in significant numbers that accommodate

his limitations.

In this case, the ALJ made a RFC based on several factors, including Claimant's testimony, reports of Claimant's physicians and his comprehensive review of the medical evidence of record. (Tr. 17-26). From weighing this evidence, the ALJ determined that Claimant retained the RFC to perform the full range of sedentary work that allowed him the option to sit or stand at will. (Tr. 24, 26). Claimant contends that the RFC in the ALJ's question on the transcript is inconsistent with the RFC in his written decision and does not comply with SSR 96-9p. Specifically, Claimant alleges that the ALJ erred in failing to specify the frequency of his need to alternate sitting and standing in his hypothetical to the VE. (Pl.'s Br. at 13).

During the hearing, the ALJ asked the VE whether a significant number of jobs existed in the national economy for an individual of Claimant's age, education, past relevant work experience and residual functional capacity as determined. The exchange between the ALJ and the VE is as follows:

ALJ     Please assume a younger individual with a high school education precluded from performing all but sedentary work with a sit-stand option. No repetitive bending. No hazards such as dangerous and moving machinery, unprotected heights. No climbing or walking on uneven ground. Unskilled, low-stress work - - strike that.

*          *          *

ALJ     Okay. The hypothetical is sedentary, sit-stand, no repetitive bending, no hazards, no climbing, or walking in uneven ground. With those

20

limitations, Mr. Ganoe, can you describe any work this hypothetical individual can perform?

VE      Sedentary exertional level.  Security surveillance monitor, 97,000 nationally, 9,000 locally.  Dispatcher/router, 111,000 nationally, 9,000 regionally. Assembler, 149,000 nationally, 6,500 regionally.  And because the hypothetical has no repetitive bending in it, we reduce those numbers in half, Your Honor.

ALJ         Are those jobs consistent with the DOT?

VE          Yes, they are, Your Honor.

ATTY        Excuse me.  What was that last one?

VE          Assembler.

(Tr. 362-363).

Claimant points to the following language from Social Security Ruling 96-9p:

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.  See SSR 96-9p.

Although it would have been better for the ALJ to have been more specific regarding the frequency of Claimant's need to alternate sitting and standing, the ALJ's failure to define the nature of Claimant's sit/stand option more specifically did not affect the outcome in this case because the jobs identified by the VE were those in which Claimant could change positions at

will.

Claimant's next argues that substantial evidence does not support the ALJ's finding that Claimant no longer needed to rest daily after October 29, 2002.

It is the duty of the ALJ to resolve conflicts in the evidence; whereas it is the duty of this Court to determine whether the Commissioner's findings are supported by substantial evidence. Hays, 907 F.2d at 1456. This Court cannot say that, in light of the evidence of record and the evidence outlined in the ALJ's decision, there was not substantial evidence for the ALJ's determination of Claimant's RFC. The ALJ reasonably found that the record had not credibly established that Claimant had a medically determinable need to rest during the day. As discussed above, the ALJ found that Claimant's testimony regarding "his degree of limitations present since October 29, 2002" was not fully credible. (Tr. 24). The ALJ further noted that this finding was consistent with Claimant's reported daily activities. For example, Claimant takes his father to get heating fuel and his mother to the store and to her doctor; takes his children to their appointments and gets them up in the morning; vacuums; washes the dishes; does some laundry; watches some television; and uses his computer. (Tr. 24).

Finally, Claimant contends that, because the ALJ failed to include all of Claimant's impairments in the RFC, the ALJ relied upon an incomplete hypothetical question to the VE. The question is whether the hypothetical question properly set forth all the relevant evidence of record concerning Claimant's impairments. The Fourth Circuit Court of Appeal has held, albeit in unpublished opinion, that while questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record. Russell v. Barnhart, No. 02-1201, 2003 WL 257494, at ** 4 (4th Cir. Feb. 7, 2003). The

court further stated that the hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe.  Id.

As discussed above, the ALJ's hypothetical to the vocational expert incorporated Claimant's limitations that are supported by the record.  Accordingly, the ALJ properly included all of Claimant's impairments supported by the evidence of record in posing the hypothetical question to the vocational expert.

As was stated above, in reviewing the ALJ's decision, the Court cannot re-weigh evidence, resolve conflicts in the record, decide questions of credibility or substitute our own judgment fo that of the Commissioner.  Hays, 907 F.2d at 1456.  See also  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).   Although the ALJ did not specify the frequency of Claimant's need to alternate sitting and standing when he posed the hypothetical question to the VE, the ALJ properly found, based on the VE's testimony, that Claimant could perform work as a dispatcher, assembler and security surveillance monitor.  (Tr.  27).  Additionally, the ALJ properly found that Claimant's allegations that he required the ability to lie down during the day after October 29, 2002 was inconsistent with the record and not credible.  (Tr. 23-24).  Finally, the ALJ properly included all of Claimant's impairments supported by the evidence of record in posing the hypothetical question to the vocational expert.  Therefore, the ALJ properly found that the Commissioner met her burden at Step Five of the sequential analysis.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED

because the ALJ was substantially justified in his decision.  Specifically, the ALJ (1) properly

determined that Claimant was no longer disabled after October 29, 2002; and (2) properly found

that the Commissioner met her burden at  Step Five of the Sequential Analysis.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten

(10) days after being served with a copy of this Report and Recommendation, file with the Clerk

of the Court written objections identifying the portions of the Report and Recommendation to

which objection is made, and the basis for such objection.   A copy of such objections should be

submitted to the District Court Judge of Record.  Failure to timely file objections to the Report

and Recommendation set forth above will result in waiver of the right to appeal from a judgment

of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation

to parties who appear *pro se* and all counsel of record, as applicable, as provided in the

Administrative Procedures for Electronic case Filing in the Unites States District Court for the

Norther District of West Virginia.

DATED: January 11, 2006


 /s/ James E. Seibert
JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE